NOT FOR PUBLICATION

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Barbara BREWER,

    Plaintiff,

v.

KMART CORPORATION, an unknown entity, and DOES 1-25 inclusive,

    Defendants.

Case No. 5:08-cv-1914

OPINION & ORDER

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court upon Defendant's Motion for Summary Judgment [docket # 20]. The Court has decided the motion upon consideration of the parties' written submissions, without holding oral argument. For the reasons given below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Barbara Brewer brings this lawsuit against Defendant Kmart Corporation, alleging that Defendant terminated her employment in retaliation for her resistance to certain unlawful actions that Kmart store management took beginning in 2004. The following facts are either undisputed or else disputed but supported by admissible evidence provided by Plaintiff, the nonmoving party in this motion.

Plaintiff has worked for Kmart since 1982, and, in late 1993 or early 1994, she began working at the Banning, California Kmart store as an office manager. (Brewer Dep.[2] 20, 27, 28.)

---

[1] United States District Judge for the District of New Jersey, sitting by designation.
[2] Portions of Barbara Brewer's deposition are attached as exhibits to both Defendant's and Plaintiff's briefs.

1

In 2004, Plaintiff was given additional responsibilities for the Banning store's human resource functions, which had previously been handled by a separate employee. (Pl.'s Statement Disputed Facts[3] ["PSF"] ¶ 1.) In her new combined role, Plaintiff had the responsibility to make sure that employees took lunch breaks during the first five hours of their shifts. (Brewer Dep. 91-92.)

During the time period relevant to this lawsuit, Kmart provided each of its stores with a forecasted number of both "payroll hours" and "payroll dollars" to use on a weekly basis. (PSF ¶ 28.) Management personnel at each store had an incentive to minimize payroll expenses, as this would make it more likely that they would receive bonuses. (*Id.* ¶ 26.) Plaintiff herself was an hourly associate, and was hence ineligible for such bonuses. (*Id.* ¶ 27.) At some point in 2004, Plaintiff participated in a meeting about the store's allotted payroll hours with Diane Rosauer, Tom Rynders, and others. (*Id.* ¶ 29.) Diane Rosauer was Plaintiff's supervisor, and Tom Rynders was the Banning store's Store Manager. (*Id.* ¶¶ 4-5.) At this meeting and other meetings, Rynders explained a method he had devised for using the store's allotted payroll dollars without exceeding the store's allotted payroll hours. (*Id.*) Kmart's computerized payment system allowed for hourly workers to be paid using a "miscellaneous pay" category—a pay category that apparently did not require the expenditure of any payroll hours. (*Id.* ¶¶ 33-34.) Rynders told Plaintiff to record a significant quantity of employee hours, including some of her own, as "miscellaneous pay" so that employees could get paid without their hours showing up as payroll hours. (*Id.* ¶¶ 34-35, 52-53.)

On multiple occasions over the next few years—including an occasion on the date of her termination—Plaintiff expressed concerns about the miscellaneous pay recording method that Rynders instructed her to use, telling Rynders that this practice violated company policy. (*Id.* ¶¶ 46-47, 51, 54.) On each occasion, Rynders assured Plaintiff that there was nothing wrong. (*Id.*

---

[3] The Court cites only to those portions of Plaintiff's statement of facts which are supported by evidence.

¶¶ 46, 48, 51, 54.) He further assured Plaintiff that Kmart's District Manager Mark Johnson knew about the miscellaneous pay scheme and approved of it. (*Id.*)

In the years leading up to her termination, Plaintiff also became aware that employees in the Banning store's electronics and appliances departments were not being given timely lunch breaks. (*Id.* ¶ 65.) She raised her concerns in this regard with Rosauer. However, Rosauer informed Plaintiff that there was insufficient staffing to permit employees to take timely lunches, and she told Plaintiff to adjust employees' timecards to make it look like they took lunches within five hours. (PSF ¶¶ 65-66.) Plaintiff followed Rosauer's instructions. (*Id.* ¶ 66.)

During the last few months of Plaintiff's employment in 2007, Plaintiff and Rynders had several arguments over the miscellaneous pay issue. (*Id.* ¶¶ 89.) At one point, Rynders told Plaintiff that she would have to do things the way he wanted if she wanted to keep her job. (*Id.* ¶ 91.) Plaintiff responded by telling Rynders that she would "go over his head" if necessary to correct the timekeeping issue. (*Id.* ¶ 92.) In July of 2007, Plaintiff completed a document entitled "Human Resources Review," in which she indicated the Banning store's non-compliance with Kmart's time card reporting standards and meal break policies. (*Id.* ¶¶ 96-98.) It is unclear if anybody outside the Banning office ever saw or reviewed that report.

Around the time Plaintiff completed the Human Resources Review, Tom Hathaway, Kmart's District Loss Prevention Manager, started an investigation of Plaintiff following two complaints that Plaintiff went "in and out of the store as she pleased." (*Id.* ¶ 99.) Hathaway reviewed Plaintiff's time records and interviewed several people, including Assistant Manager Mireya Avila, Plaintiff, Rosauer, and Rynders. (*Id.* ¶¶ 103, 109, 117, 120, 127.) Avila and Plaintiff had previously had some disputes over how to schedule employees. (*Id.* ¶¶ 69, 74, 76.) Based on his review of the store records and his interviews with store personnel, Hathaway

concluded that Plaintiff had violated several store policies, including improperly adjusting her time card, taking unauthorized off-site trips during work hours, and bringing her child to work. Rynders claimed to have no knowledge of Plaintiff's alleged wrongdoing, though Hathaway suspected Rynders knew what was going on. (*Id.* ¶ 127, 128.) Hathaway apparently did not make an effort to determine whether Plaintiff's off-site trips and miscellaneous pay were authorized by Rynders. (*Id.* ¶¶ 101-102, 106, 107.) Ultimately, Hathaway presented his investigation to Kmart's regional staff, and District Manager Mark Johnson relied on Hathaway's report in deciding to terminate Plaintiff's employment. (*Id.* ¶¶ 134-35.)

## ANALYSIS

I.  Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its case, it is not obliged to produce evidence specifically

disproving those elements essential to its adversary's case. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

II. <u>Whistleblower Retaliation</u>

Plaintiff's first claim is a claim for unlawful retaliation in violation of California Labor Code § 1102.5. Subsection (b) of that section prohibits an employer from retaliating against an employee for "disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute," while subsection (c) prohibits retaliation against an employee for "refusing to participate in an activity that would result in a violation of state or federal statute." The evidence currently available does not support a finding that Defendants violated either of these prohibitions. There is no evidence showing that Plaintiff ever disclosed any information to a law enforcement agency, so she clearly does not have a viable claim under subsection (b).

Nor does the evidence show that Plaintiff ever refused to participate in any unlawful activity. The evidence merely shows that Plaintiff expressed concerns about certain activities while going along with those activities. Plaintiff argues that she merely went along with the miscellaneous pay scheme because she feared for her job and that this "coerced acquiescence" should still count as "refusing to participate" within the meaning of § 1102.5(c). (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 20.) However, she does not identify any legal authority that would support reading the phrase "refusing to participate" to encompass the idea of coerced

5

acquiescence, and as a matter of common understanding, the word "refusing" does not bear this meaning. Therefore Plaintiff does not have a valid claim under subsection (c). Since Plaintiff cannot show that Defendant violated California Labor Code § 1102.5, the Court will enter judgment against Plaintiff on Count 1 of the First Amended Complaint.

### III. Retaliatory Termination in Violation of Public Policy

Whereas California Labor Code § 1102.5(c) only supports a claim by a plaintiff who refuses to participate in an unlawful scheme, California common law supports a cause of action by a plaintiff who merely protests unlawful activity and is fired in retaliation. *See Barton v. New United Motor Mfg., Inc.*, 43 Cal. App. 4th 1200, 1205 (1996). Plaintiff's claim here is based on the theory that she was fired in retaliation for complaining about the miscellaneous pay scheme and employee lunch break scheduling. Defendant seeks dismissal of Plaintiff's common law retaliatory termination claim on the grounds that Plaintiff has not introduced evidence sufficient to support a finding either that (1) Plaintiff's protests caused her termination or that (2) Defendant's proffered reason for her termination—that she manipulated her timecard and violated other store policies—is pretextual.[4]

#### A. Causation

Defendant first argues that Johnson made the decision to fire Plaintiff but that the evidence does not show that Johnson was even aware that Plaintiff had complained about the miscellaneous pay scheme or the employee lunch scheduling issue. A necessary aspect of the causation element in Plaintiff's claim is that the defendant must be aware that the plaintiff engaged in protected activity. *See Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52,

---

[4] Both parties appear to accept the proposition that Plaintiff's retaliatory discharge claim should be evaluated using the *McDonnell Douglas* burden-shifting framework, which is employed in a variety of discrimination and retaliation cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Bergene v. Salt River Project Agric. Imp. & Power Co.*, 272 F.3d 1136, 1140 (9th Cir. 2001).

6

69-70 (2000) (citing cases). If Defendant was not aware of the protected activity then, as a matter of logic, Defendant's actions cannot have been motivated by retaliatory animus. However, the Court concludes that there is sufficient evidence to provide an inference that Johnson was aware of Plaintiff's complaints. Plaintiff has testified that Rynder told her, on multiple occasions, that Johnson was aware of the miscellaneous pay scheme.[5] Furthermore, an inference of causation does not depend on a showing that the actual decision maker knew about Plaintiff's protected conduct. Rather, "the plaintiff can establish the element of causation by showing that *any* of the persons involved in bringing about the adverse action held the requisite animus." *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 108 (2004). In that regard, there is evidence to support an inference that persons other than Johnson who were involved in Plaintiff's termination knew about Plaintiff's complaints. For example, Hathaway began investigating Plaintiff right around the same time that Plaintiff completed her "Human Resources Review," which detailed some of her complaints. While there is no direct evidence that the Human Resources Review was shown to either Hathaway or Johnson, the temporal proximity between the completion of that report and the investigation of Plaintiff would support an inference that either Hathaway or Johnson (or both) viewed the report.

  B. Pretext

Defendant further argues that, even if Plaintiff makes out a prima facie case of retaliation, she cannot show that Defendant's explanation for her termination—that she violated company policy—is a pretext. Defendant leans quite heavily on the proposition that Defendant admitted to violating Kmart policies. But even accepting for the sake of argument that this proposition is

---

[5] Defendant objects to this evidence as hearsay, but Rynder's alleged statements to Plaintiff fall comfortably within the "admission of a party-opponent" exception as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). As a Kmart store manager, Rynder is clearly an agent of Defendant Kmart, and any statements concerning employee pay would be statements "concerning a matter within the scope of the agency or employment."

7

true, it does not follow that Plaintiff's common law retaliatory termination claim necessarily fails. Even if Defendant had a legitimate reason to terminate Plaintiff, that termination would still be unlawful if carried out in retaliation for protected activity. The cases supporting a claim for wrongful discharge make clear that a retaliatory firing is not rendered lawful merely because the employer otherwise had the authority to terminate the plaintiff. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980); *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 295 (1982).

Given the evidence currently available, a material issue of fact exists as to whether Defendant's proffered explanation for Plaintiff's termination is pretextual. Hathaway's testimony reveals that, in the course of investigating Plaintiff, he failed to follow up on several suggestions that Plaintiff's conduct was either approved of or even endorsed by her Store Manager, Rynder. A fact finder could interpret this omission as showing that Hathaway's investigation was a pretext designed to provide grounds for a firing that was actually based on retaliatory animus. Furthermore, it appears that Hathaway suspected that Rynder was knowledgeable of or complicit in Plaintiff's violations, but there is no indication that Defendant followed up with any kind of investigation into Rynder's actions. Again, a fact finder could infer from this difference in treatment between Plaintiff and Rynder that Defendant's proffered explanation for Plaintiff's termination is a prextext, and that its real reason for terminating Plaintiff was retaliation for her complaints.

As a genuine dispute of material fact remains on Plaintiff's claim for retaliatory discharge in violation of public policy, the Court will not enter judgment on Count 2 of the First Amended Complaint.

IV. <u>Failure to Maintain Accurate Time Records</u>

Plaintiff brings claims under California Labor Code § 1174 and 8 C.C.R. § 11040 ¶ 7(A) for Defendant's failure to keep accurate time records. Enforcement of those sections is, in the first instance, entrusted to the California Labor Commissioner, and a private plaintiff may only institute suit after complying with "The Labor Code Private Attorneys General Act of 2004." Cal. Labor Code § 2699.3. That section requires a private plaintiff to send written notice of the alleged violations to the California Labor and Workforce Development Agency and then wait until either 33 days have passed or the Agency has notified the private plaintiff that it does not intend to investigate the alleged violation. *Id.* There is no evidence that Plaintiff complied with the prescribed waiting period before commencing this lawsuit. Therefore, Plaintiff lacks standing to bring claims under California Labor Code § 1174 and 8 C.C.R. § 11040 ¶ 7(A), and Defendant is entitled to judgment on those claims.

V. Breach of the Duty of Good Faith and Fair Dealing

Parties to a contract each owe a duty not to deprive the other party of the expected benefits of the agreement. *See, e.g., Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566 (1973)). However, an employer may terminate an "at-will" employee "for any or no reason. A fortiori, the employer may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 350 (2000). As the California Supreme Court explained, "The mere existence of an employment relationship affords no expectation, protectible [*sic*] by law, that employment will continue, or will end only on certain conditions." *Id.* The employment contract that Plaintiff signed with Kmart clearly provides that she held only "at-will" employment. Therefore, she had no protectable expectation in her continued employment.

9

Consequentially, even if it were to be shown at trial that Plaintiff was terminated for unlawful reasons, this would not deny her the benefit of any legitimate expectation under her employment contract. Accordingly, Defendant cannot have breached the duty of good faith and fair dealing when it terminated Plaintiff, and it is entitled to summary judgment on the Fourth Count of the First Amended Complaint.

VI. Recovery of Civil Penalties

In the Fifth Count of the First Amended Complaint, Plaintiff seeks to recover civil penalties for Defendant's alleged violations of the California Labor Code. However, as explained above, the Court will enter judgment against Plaintiff on all of her claims brought under the labor code; only her common law unlawful termination claim remains. Since Plaintiff has no viable labor code claims, she cannot recover any civil penalties that are available under the code, and Count Five of the First Amended Complaint must be dismissed.

CONCLUSION

For the foregoing reasons, it is, this 7th day of June, 2010,

ORDERED that Defendant's Motion for Summary Judgment [docket # 20] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that JUDGMENT be entered in favor of Defendants and against Plaintiff on Counts One, Three, Four and Five of the First Amended Complaint.

ANNE E. THOMPSON, U.S.D.J.